IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DERRICK JUSTICE, | : | Case No. 1:17-cv-771 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | **ORDER GRANTING PLAINTIFF'S** |
| | : | **MOTION FOR PARTIAL SUMMARY** |
| NORFOLK SOUTHERN RAILWAY | : | **JUDGMENT** |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 16). Defendant opposed the motion (Doc. 21). Plaintiff replied in support of his motion (Doc. 22, 23), and, with leave of Court, Defendant filed a supplemental response (Doc. 26). For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment will be **GRANTED**.

## I.  BACKGROUND

**A. Facts**

The facts in this case are largely undisputed.[1] Defendant Norfolk Southern Railway Company ("Norfolk") employed Plaintiff Derrick Justice as an engineer. On September 5, 2016, Justice reported to Norfolk's Portsmouth, Ohio yard for work. Justice, working with conductor David Bradford, was scheduled to be the engineer on the 80A/188 train which would proceed from Portsmouth, Ohio to Williamson, West Virginia. The fourth locomotive of Plaintiff's assigned train was NS 8028. NS 8028 was traveling "dead in tow," meaning the power on the locomotive had not been activated.

---

[1] Unless otherwise indicated, the parties admit the facts alleged. (*See* Plaintiff's Statement of Proposed Undisputed Facts and Defendant's Responses to Plaintiff's Statement of Proposed Undisputed Facts, Docs. 17-1 and 21-2.)

1

As Justice and Bradford were preparing the train for departure, Justice boarded NS 8028 to release the hand brake. After releasing the hand brake, Justice crossed the engine platform to enter the engine cab. As he attempted to climb the steps leading to the engine cab, his feet slipped out from under him, causing him to fall and suffer injury.[2]

After the fall, Bradford assisted Justice off of NS 8028. Bradford and Trainmaster Edwards inspected the walkway of NS 8028 and observed oil on the walkway. Norfolk's post-injury investigative report dated September 5, 2016 found oil present on the locomotive walkway and oil residue on the sole of Justice's boots.

A non-complying tag had been issued for locomotive NS 8028 on August 31, 2016 in Cincinnati, Ohio indicating oil on the walkway and engine body. The August 31, 2016 tag stated that the engine had been cleaned but would be towed to Bellevue, Ohio.

A non-complying tag had been issued for locomotive NS 8028 on September 5, 2016 in Bellevue, Ohio, stating that there was oil on the engine walkway and body. Prior to Justice's injury in Portsmouth later that day, Norfolk had not provided Justice with any written or verbal notification of oil on the NS 8028 engine walkway or of any "non-complying condition."

**B. Procedural Posture**

Justice initiated this action alleging violations of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, and the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701, *et seq.* He contends that Norfolk violated the LIA (specifically 49 C.F.R. § 229.9) which establishes negligence as a matter of law under the FELA. Accordingly, Justice now moves for partial summary judgment as to liability only on his FELA claim. Norfolk admits that it had not yet complied with 49 C.F.R. § 229.9 at the time of Justice's injury. However, according to

---

[2] Norfolk admits Justice suffered injury from his fall on NS 8028 but disputes "the claimed severity, duration and consequences thereof." (Doc. 21-2 at PageID 324, ¶ 22.)

Norfolk, the plain language of § 229.9 contemplates movement. Since the train was not in motion at the time of Justice's injury, Norfolk argues, § 229.9 had not yet been violated so Justice is not entitled to summary judgment on his FELA claim. In addition, Norfolk contends that a reasonable jury could conclude that Justice's failure to avoid visible oil on the NS 8020 walkway was the sole cause of his injury, thereby relieving Norfolk of liability.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*). A genuine issue for trial exists when there is

3

sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

### III. ANALYSIS

The FELA provides, in pertinent part, that:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. "[A]n avowed departure from the rules of the common law, [FELA] was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work." *Edwards v. CSX Transp., Inc.*, 574 F. App'x 614, 616 (6th Cir. 2014) (quoting *Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 329 (1958)). "Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that *employer negligence played any part, even the slightest, in producing the injury* . . . for which damages are sought." *Id.* at 617 (quoting *CSX Transp., Inc. v. McBride*, ___ U.S. ___, 131 S. Ct. 2630, 2636 (2011)) (emphasis in original).

As the United States Court of Appeals for the Sixth Circuit has explained:

> To supplement FELA and facilitate employee recovery, Congress enacted the LIA (formerly the Boiler Inspection Act), which

> imposes an absolute duty on railroad carriers to ensure their locomotives are properly maintained and safe to operate. LIA claims are actionable under the FELA; that is, LIA does not confer a right of action on injured employees, but rather, has been construed as a supplement to FELA such that **proof of a violation under LIA establishes negligence as a matter of law under FELA**.

*Edwards*, 574 F. App'x at 617 (citations omitted) (emphasis added).

Pursuant to the LIA:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701. Thus, a rail carrier violates the LIA if it fails to comply with the regulations promulgated under the LIA, thereby establishing negligence as a matter of law under the FELA. "An employee's contributory negligence does not bar his recovery."[3] *Edwards*, 574 F. App'x at 617 (citing *Szekeres v. CSX Transp., Inc.*, 617 F.3d 424 (6th Cir. 2010)).

One of the regulations promulgated under the LIA, "Movement of Non-Complying Locomotives," is contained at 49 C.F.R. § 229.9(a). It provides in pertinent part:

---

[3] Norfolk alleges that causation remains a jury issue here because the oil on the walkway was "visible" and could have been avoided. According to Norfolk, then, a reasonable factfinder could conclude that Justice's inattention was the "sole cause" of his injury. (Doc. 21 at PageID 315–17.) An FELA defendant may escape liability where an employee's own negligence is the "sole cause" of his injury, but the defendant "bears the burden of proof in establishing [plaintiff's] negligence as a sole proximate cause." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 351 (6th Cir. 2002). In this case, Norfolk has offered no such evidence. In addition, Courts have rejected this argument in railroad trip and fall cases. *See, e.g., Jarrett v. CSX Transp., Inc.*, 2008 WL 4239148 (N.D. Ohio Sept. 10, 2008) (failure to avoid tripping on visible air hose does not create jury question of sole proximate cause). Indeed, Norfolk admits that there was oil on the locomotive, that Justice "fell at the time and place alleged," that Norfolk's own investigative report confirmed that Justice's boots had oil residue on the sole, and that "one of the members of the outbound train crew was 'required' to board Locomotive 8028 and release its hand brake." (Doc. 21-2 at PageID 323.) Under these undisputed facts, Justice's inattention may constitute contributory negligence, but it does not permit the conclusion that Norfolk's negligence played not even the slightest part in Justice's injury.

5

> [A] locomotive with one or more conditions not in compliance with this part may be moved as a lite locomotive or a dead locomotive after the carrier has complied with the following:
> (1) A qualified person shall determine—
> (i) That it is safe to move the locomotive; and
> (ii) The maximum speed and other restrictions necessary for safely conducting the movement;
> (2)(i) The engineer in charge of the movement of the locomotive shall be notified in writing and inform all other crew members in the cab of the presence of the non-complying locomotive and the maximum speed and other restrictions determined under the paragraph (a)(1)(ii) of this section.
> (ii) A copy of the tag described in paragraph (a)(3) of this section may be used to provide the notification required by paragraph (a)(2)(i) of this section.
> (3) A tag bearing the words "non-complying locomotive" and containing [specific enumerated] information, shall be securely attached to the control stand on each MU or control cab locomotive and to the isolation switch or near the engine start switch on every other type of locomotive . . .

49 C.F.R. § 229.9(a). In this case, then, Norfolk is liable to Justice for his injury as a matter of law if Norfolk violated 49 C.F.R. § 229.9 (or other LIA provision or regulation)[4] and Norfolk's violation played even the slightest part in Justice's injury.

The facts relevant to this inquiry are undisputed. On September 5, 2016, locomotive NS 8028 had been transported "dead in tow" from Bellevue, Ohio to Columbus, Ohio, and then to Portsmouth, Ohio. A non-complying tag had been issued for NS 8028 in Bellevue, Ohio, stating that there was oil on the engine walkway and body, but Norfolk did not provide Justice with written or verbal notification of the non-complying condition. A non-complying tag was not issued in Columbus, Ohio or in Portsmouth, Ohio prior to Justice's injury. Justice's injury

---

[4] Norfolk emphasizes, "This Plaintiff opted to predicate his MPSJ on one ground: that the locomotive in question was in violation of § 229.9." (Doc. 26 at PageID 420.) However, this Court is not limited to considering only the arguments made by the parties. Fed. R. Civ. P. 56. The Court notes that 49 C.F.R. § 229.119(c) requires, "Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard."

occurred when he climbed onto NS 8028 to release the hand brake in preparation for transporting it "dead in tow" to West Virginia.

Norfolk essentially acknowledges that it had not—at the time of Justice's injury—complied with 49 C.F.R. §229.9. However, according to Norfolk, it still had time to do so before Justice "moved" NS 8028. Because NS 8028 was not yet in motion, Norfolk still had time to comply with § 229.9, so therefore, Norfolk argues, it is not liable for Justice's injury.

The Court finds Norfolk's argument unpersuasive for several reasons. First, the plain language of § 229.9 does not require that the locomotive be in motion at the time of the injury. Specifically, § 229.9 permits movement of a non-complying locomotive "as a lite locomotive or a dead locomotive" only "**after** the carrier has complied with [the specific warning and tagging obligations]." 49 C.F.R. § 229.9(a) (emphasis added). Norfolk admittedly moved the non-complying locomotive from Columbus, Ohio to Portsmouth, Ohio without providing the required warnings. At the time of Justice's injury, NS 8028 remained part of Norfolk Train 188 which had been in transit from Columbus to Portsmouth that day and which was to be in transit again shortly to a West Virginia repair facility. Second, Norfolk has failed to cite a single case in which any court anywhere in the country required actual locomotive movement at the time of a train employee's injury under § 229.9 or any other LIA provision or regulation.

Finally, the case law regarding LIA application to non-moving trains focuses not on whether the train was actually moving at the time of the injury but on whether a locomotive was "in use on the line" as required by 42 U.S.C. § 20701.[5] While the Circuits are split regarding the

---

[5] Norfolk acknowledges that "that issue will have to be addressed eventually in this case, but not now." (Doc. 26 at PageID 420; *see also* Doc. 21 at PageID 314.) However, the motions deadline in this matter has long passed, and the final pretrial conference is scheduled for April 24, 2019. If Norfolk intended to argue that the LIA does not apply here because NS 8028 was not "in use on the line" then that argument should have been made at or before this juncture.

7

appropriate standard for determining whether a locomotive was "in use on the line," the Courts in this District have uniformly applied the multi-factor test first articulated in *Deans v. CSX Transp., Inc.*, 152 F.3d 326 (4th Cir. 1998). *See Aldridge v. CSX Transp., Inc.*, Case No. 1:06-CV-00128 (S.D. Ohio April 17, 2007); *see also Hinkle v. Norfolk Southern Ry. Co.*, 2006 WL 3783521 (S.D. Ohio Dec. 21, 2006). In *Deans*, the Court concluded the determinative factors are "where the train was located at the time of the accident and the activity of the injured party." *Deans*, 152 F.3d at 329–30 (Train was in use when conductor, "part of the transportation crew," injured himself sitting in improperly secured seat because "although the train had not yet begun moving on the main track, it had already had its engine coupled to it and was standing on a track in the rail yard in preparation for imminent departure—not in storage or waiting to be moved into a repair location.").

In a case similar to the one at bar, a conductor in the process of readying a recently-arrived, non-moving locomotive for its return trip boarded the non-moving locomotive, slipped on ice that had formed as a result of a water leak, and fell, injuring his back. A much-admired jurist from this District, the late S. Arthur Spiegel, noted that the FELA is to be liberally construed and applied a multi-factor analysis to conclude that the locomotive was "in use on the line" as required for LIA application and granted summary judgment as to liability in favor of the injured conductor. *Aldridge v. CSX Transp., Inc.*, Case No. 1:06-CV-00128 (S.D. Ohio April 17, 2007). Like the conductor in *Aldridge*, Justice boarded NS 8020 to perform necessary tasks to ready the train for departure. As in *Aldridge*, the task at hand—releasing the hand brake on NS 8020—was merely one of a series of readying tasks, and the fact that other tasks remained before the train could begin its journey did not change the "in use on the line" analysis. Accordingly,

8

the Court rejects Norfolk's contention that LIA liability does not attach here because the locomotive on which Justice was injured was not actually moving at the time of the injury.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Doc. 16), is hereby **GRANTED**.  This matter will proceed solely on the amount of damages to which Plaintiff is entitled.

**IT IS SO ORDERED**.

Dated: 4/9/2019                     S/Susan J. Dlott_____
                                    Judge Susan J. Dlott
                                    United States District Court